J-S33029-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT J. McNEILL, | : | |
| | : | |
| Appellant | : | No. 2044 EDA 2014 |

Appeal from the Judgment of Sentence May 30, 2014,
Court of Common Pleas, Lehigh County,
Criminal Division at No(s): CP-39-CR-0003087-2013
and CP-39-CR-0004513-2013

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE and LAZARUS, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED JULY 21, 2015**

Appellant, Robert J. McNeill ("McNeill"), appeals from the judgment of sentence entered on May 30, 2014 in the Court of Common Pleas, Lehigh County.  For the reasons set forth herein, we vacate the judgment of sentence and remand the case for further proceedings.

A brief summary of the relevant facts and procedural history is as follows.  On February 26, 2012, Chad Pierce ("Pierce") and his family returned to their home to discover that someone had broken in and stolen personal items.  The perpetrator left blood throughout the house.  The police collected blood samples and submitted them to the Pennsylvania State Police laboratory.

On March 26, 2012, Elsie Pribula ("Pribula") returned to her home to discover an individual in her house.  She immediately left and ran to a

neighbor's house. The perpetrator was gone by the time the police arrived, and had removed several thousand dollars' worth of jewelry and currency. The police discovered blood around the windowsill and in the bedroom dresser drawers, and again collected and submitted samples for analysis.

On April 16, 2013, police received information from the laboratory that the blood samples taken from Pierce's home matched a sample on file that belonged to McNeill. On April 17, 2013, police obtained a search warrant for a DNA blood sample or oral buccal swab from McNeill and executed the search warrant on April 18, 2013. On that date, police obtained two buccal swabs from McNeill to compare the results directly with the blood samples police collected from the homes of Pierce and Pribula. On May 14, 2013, police obtained the results from the buccal swabs, which indicated a DNA match to the blood samples recovered at the home of Pribula. Police obtained results in August 2013 that McNeill's DNA also matched the blood samples recovered at Pierce's home.

McNeill was charged with two counts of burglary, 18 Pa.C.S.A. § 3502(a); criminal trespass, 18 Pa.C.S.A. § 3503(a); criminal mischief, 18 Pa.C.S.A. § 3304(a)(5); theft by unlawful taking, 18 Pa.C.S.A. § 3921(a); and receiving stolen property, 18 Pa.C.S.A. § 3925(a). On January 13, 2014, McNeill entered a guilty plea. At the sentencing hearing on April 10, 2014, McNeill made an oral request to withdraw his guilty plea, upon which the trial court deferred ruling to allow McNeill to speak to his counsel and file

a formal written motion. McNeill thereafter filed a motion to withdraw his guilty plea on May 1, 2014, which the trial court denied on May 5, 2014. On May 30, 2014, the trial court sentenced McNeill to twenty-seven months to ten years of incarceration.

On June 9, 2014, McNeill filed a post-sentence motion to reconsider and modify his sentence, which the trial court denied on June 12, 2014. On July 10, 2014, McNeill filed a timely notice of appeal to this Court, raising the following two issues for our review, which we have reordered for ease of disposition:

> 1. Whether the [c]ourt erred by denying [McNeill's] motion to withdraw his guilty plea which was filed prior to sentencing when [McNeill] proclaimed his innocence to the specific factual basis for the burglary charge?
>
> 2. Whether the [c]ourt erred in sentencing [McNeill] when it incorrectly calculated [] McNeill's prior record score and his sentencing guidelines based upon a faulty determination of the effect of a prior out-of-state conviction?

McNeill's Brief at 7.

For his first issue on appeal, McNeill argues that the trial court erred by denying his presentence motion to withdraw his guilty plea in connection with the burglary of Pribula's home. McNeill's Brief at 18.

> The standard of review that we employ in challenges to a trial court's decision regarding a presentence motion to withdraw a guilty plea is well-settled. "A trial court's decision regarding whether to permit a guilty plea to be withdrawn should not be upset

> absent an abuse of discretion. An abuse of discretion exists when a defendant shows any 'fair and just' reasons for withdrawing his plea absent 'substantial prejudice' to the Commonwealth." In its discretion, a trial court may grant a motion for the withdrawal of a guilty plea at any time before the imposition of sentence. Pa.R.Crim.P. 591(A). "Although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made before sentencing ... should be liberally allowed." The policy underlying this liberal exercise of discretion is well-established: "The trial courts in exercising their discretion must recognize that 'before judgment, the courts should show solicitude for a defendant who wishes to undo a waiver of all constitutional rights that surround the right to trial—perhaps the most devastating waiver possible under our constitution.'"

*Commonwealth v. Elia*, 83 A.3d 254, 261-62 (Pa. Super. 2013) (internal citations omitted).

In this case, McNeill filed a motion to withdraw his guilty plea with regard to the Pribula burglary, contending that he was not guilty of a burglary with a person present. N.T., 5/1/14, at 8. McNeill conceded that he was guilty of burglary and that his DNA was found in Pribula's house, but argued that he was not guilty of burglary with a person present because he was not present in the house when Pribula or any other person was in the house. *Id.* at 8, 17-18.

The trial court concluded that McNeill's assertion of innocence was "disingenuous at best" and "an attempt to circumvent the workings of the criminal justice system[.]" Trial Court Opinion, 5/5/14, at 5. The trial court

found that McNeill "without reservation, repeatedly admitted his guilt in the within case until after he reviewed his Pre-Sentence Investigation Report." *Id.* The trial court further determined that the only reason McNeill sought to withdraw his guilty plea was because he did not want to go to prison for eighty-one months. N.T., 5/1/14, at 23. After our review of the record, we are unable to find an abuse of discretion.

In **Commonwealth v. Forbes**, 299 A.2d 268 (Pa. 1973), our Supreme Court instructed that

> in determining whether to grant a pre-sentence motion for withdrawal of a guilty plea, "the test to be applied by the trial courts is fairness and justice." If the trial court finds "any fair and just reason", withdrawal of the plea before sentence should be freely permitted, unless the prosecution has been 'substantially prejudiced.'

*Id.* at 271.

In recent years, this Court has adopted a per se approach to innocence claims by defendants, holding that "[our] Supreme Court [in **Forbes**] held that the mere articulation of innocence was a 'fair and just' reason for the pre-sentence withdrawal of a guilty plea unless the Commonwealth has demonstrated that it would be substantially prejudiced." **Commonwealth v. Katonka**, 33 A.3d 44, 49 (Pa. Super. 2011). In so doing, this Court has limited a trial court's discretion in granting or denying a presentence motion for withdrawal of a guilty plea by foreclosing credibility determinations relative to a defendant's assertion of innocence. **See id.** (citing

*Commonwealth v. Randolph*, 718 A.2d 1242, 1244 (Pa. 1998) (finding that our Supreme Court condemned "rendering a credibility determination as to the defendant's actual innocence.")). Specifically, this Court has held that a trial court may not deny a defendant's presentence withdrawal based on the fact that the defendant entered the guilty plea voluntarily, knowingly and intelligently, *see Commonwealth v. Pardo*, 35 A.3d 1222, 1229 (Pa. Super. 2011), or its belief that the withdrawal is being used as a dilatory tactic, *see Commonwealth v. Unangst*, 71 A.3d 1017, 1022 (Pa. Super. 2013).

In its most recent decision on this issue, however, our Supreme Court, reversed course and held that "[a]s with other such bright-line rules, [] the principle is subject to the axiom that the holding of a decision is to be determined according to the facts under consideration." *Commonwealth v. Carrasquillo*, ___ A.3d ___, 2015 WL 3684430, *8 (Pa. June 15, 2015). In *Carrasquillo*, the defendant entered an open guilty plea to sexually assaulting a sixteen-year-old girl and an eleven-year-old girl. *Id.* at *1. At a sentencing hearing that occurred three and a half months later, the defendant attempted to withdraw his guilty plea after hearing the prosecutor read into evidence a report for the Sexual Offenders Assessment Board that concluded that the defendant was a sexually violent predator. *Id.* The trial court denied his request to withdraw his guilty plea, finding that his

assertion of innocence was "implausible, insincere, and 'nothing more than an attempt to manipulate the justice system[.]'" *Id.* at *2-3.

On appeal, an en banc panel of this Court reversed the trial court's denial of the defendant's request to withdraw his guilty plea, holding that the trial court abused its discretion. *Id.* at *3 (citing ***Commonwealth v. Carrasquillo***, 78 A.3d 1120, 1131 (Pa. Super. 2013) (en banc)). The majority held that "our law does not (contrary to the Commonwealth's suggestion) require some quantum of 'rational support' as a prerequisite for a plea withdrawal[,]" and instead, reinforced the per se approach adopted by this Court which does not permit credibility determinations regarding the sincerity of a defendant's assertion of innocence. *Carrasquillo*, 78 A.3d at 1126.

Our Supreme Court granted the Commonwealth's petition for allowance of appeal and reversed this Court's decision, holding that although presentence requests to withdraw a guilty plea should be liberally granted, the trial courts have discretion to deny the request:

> [A] defendant's innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea. More broadly, the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice. The policy of liberality remains extant but has its limits,

consistent with the affordance of a degree of discretion to the common pleas courts.[1]

***Carrasquillo***, 2015 WL 3684430, at *4, *8 (internal citation omitted) (footnote added).

Applying the standards set forth in ***Carrasquillo*** to the case herein, we find no abuse of discretion by the trial court in denying McNeill's motion to withdraw his guilty plea. The trial court determined that based on the circumstances of the case, McNeill's claim of innocence was implausible and that he failed to present a fair and just reason for withdrawing his guilty plea. Instead, the trial court determined that McNeill, who "repeatedly admitted his guilt in the within case," only attempted to withdraw his plea after learning of the sentence that would be imposed. Trial Court Opinion, 5/5/14, at 5. Thus, the trial court found his assertion of innocence to be disingenuous. ***Id.***

The record reflects that at the time McNeill entered his guilty plea, the trial court failed to specify which subsection of the burglary statute applied and to which subsection he was pleading guilty. McNeill, however, accepted the trial court's version of the facts and circumstances of each burglary, including its statements that Pribula "actually came home and entered her

---

[1] Justice Stevens, in a concurring opinion, wrote separately "to emphasize [his] disapproval with the Superior Court's bright-line rule" and stated, "Trial Courts must be permitted to evaluate the credibility of an accused's assertion of innocence, including the evidence of guilt, of delay, and of ulterior or illicit motive in ruling upon an accused's presentence motion to withdraw a guilty plea." ***Carrasquillo***, 2015 WL 3684430, at *8.

house. It was dark. She saw a figure in her home. She called out to that figure, to which he responded. The figure growled at her. She fled to a neighbors['] house." N.T., 1/13/14, at 21-22. Moreover, although McNeill asserted at the hearing on his motion to withdraw his guilty plea that he "thought that [he] was pleading guilty to a burglary that had nothing to do with a person present," *see* N.T., 5/1/14, at 6, he stated in his written motion to withdraw his guilty plea that he informed his counsel that he pled guilty to the crime of burglary, person present, because he believed that "he would receive significantly less jail time than had he been convicted after trial." McNeill's Motion to Withdraw Guilty Plea, at ¶ 8. McNeill further asserted in his written motion that he pled guilty "because he believed that the [c]ourt would not accept a guilty plea without him admitting to the specific crime alleged, [b]urglary, person present." *Id.* at ¶ 9. Thus, the record reflects that McNeill understood at the time he entered his plea that he was pleading guilty to burglary, person present, with respect to the Pribula burglary.

"It is well established that our Court will not reverse a trial court's credibility determination absent the court's abuse of discretion as factfinder." *Commonwealth v. Moser*, 921 A.2d 526, 530 (Pa. Super. 2007) (citing *Commonwealth v. O'Bryon*, 820 A.2d 1287, 1290 (Pa. Super. 2003) ("[I]t is axiomatic that appellate courts must defer to the credibility determinations of the trial court as fact finder, as the trial judge observes

the witnesses' demeanor first-hand.")). The record wholly supports the trial court's credibility determination. Accordingly, finding no abuse of discretion in this instance, we conclude that McNeill is not entitled to relief on his first issue.

For his second issue on appeal, McNeill raises a discretionary aspects of sentencing issue, arguing that the trial court incorrectly calculated his prior record score and the sentencing guidelines based on an out-of-state conviction. There is no automatic right to appeal the discretionary aspects of a sentence. *Commonwealth v. Crork*, 966 A.2d 585, 590 (Pa. Super. 2009).

> Before we reach the merits of this [issue], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Clarke*, 70 A.3d 1281, 1286 (Pa. Super. 2013) (citing *Commonwealth v. Malovich*, 903 A.2d 1247, 1250 (Pa. Super. 2006)).

In this case, McNeill filed a timely appeal and preserved his issue for appeal by raising it at the time of sentencing, thereby satisfying the first two prongs of the analysis. McNeill also satisfied the third prong as he "set forth in his brief a concise statement of the reasons relied upon for allowance of

appeal with respect to the discretionary aspects of a sentence."[2] ***See*** Pa.R.A.P. 2119(f). Finally, "[t]his Court has held that improper calculation of a prior record score based on out-of-state offenses raises a substantial question." ***Commonwealth v. Janda***, 14 A.3d 147, 165 (Pa. Super. 2011) (citing ***Commonwealth v. Diamond***, 945 A.2d 252, 258 (Pa. Super. 2008), *appeal denied*, 955 A.2d 356 (Pa. 2008); ***Commonwealth v. Anderson***, 830 A.2d 1013, 1018 (Pa. Super. 2003)). As a result, we now address the merits of McNeill's claim.

We begin with our well-settled standard of review:

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Commonwealth v. Provenzano***, 50 A.3d 148, 154 (Pa. Super. 2012) (quoting ***Commonwealth v. Walls***, 926 A.2d 957, 961 (Pa. 2007)).

---

[2] Although McNeill did not label his statement as a Rule 2119(f) statement, his statement provided reasons in support of allowance of appeal and immediately preceded his argument on the merits. We therefore conclude that McNeill substantially complied with Rule 2119(f).

At the sentencing hearing, McNeill objected to the calculation of his prior record score of five based on a 1986 offense in New York, listed as the criminal sale of marijuana. N.T., 5/30/14, at 6. McNeill asserted that the Commonwealth did not show by a preponderance of the evidence that the New York offense should be graded as a felony, and therefore, his prior record score should be four. *Id.* at 7. On appeal, McNeill argues that "[t]here simply was no factual support for the [c]ourt's finding that the New York conviction was the equivalent of a Pennsylvania felony drug offense." McNeill's Brief at 18. We agree.

The trial court, in determining the guideline sentence for a criminal conviction, must establish the defendant's prior record score. *See* 204 Pa.Code § 303.2(a)(2). The prior record score "is based on the type and number of prior convictions (§ 303.5) and prior juvenile adjudications (§ 303.6)." 204 Pa.Code § 303.4(a). It is well established that "when calculating a prior record score based upon a foreign state conviction, a conviction under federal law or a conviction for an offense under a former Pennsylvania law, we are required to score such a conviction as we would a 'current equivalent Pennsylvania offense.'" *Commonwealth v. Bolden*, 532 A.2d 1172, 1175 (Pa. Super. 1987); *see also* 204 Pa. Code § 303.8.

> In assessing the quality of a prior conviction in a foreign jurisdiction, we discern from the purpose and language of the guidelines that it was the intent of the Sentencing Commission as well as the legislature that offense equivalency be considered in terms of

> the nature and definition of the offense in light of the record of the foreign conviction. This approach requires a sentencing court to carefully review the elements of the foreign offense in terms of the classification of the conduct proscribed, its definition of the offense, and the requirements for culpability. Accordingly, the court may want to discern whether the crime is *malum in se* or *malum prohibitum,* or whether the crime is inchoate or specific. If it is a specific crime, the court may look to the subject matter sought to be protected by the statute, *e.g.* protection of the person or protection of property. It will also be necessary to examine the definition of the conduct or activity proscribed. In doing so, the court should identify the requisite elements of the crime – the *actus reus* and *mens rea* – which form the basis of liability.
>
> Having identified these elements of the foreign offense, the court should next turn its attention to the Pennsylvania Crimes Code for the purpose of determining the equivalent Pennsylvania offense. An equivalent offense is that which is substantially identical in nature and definition as the out-of-state or federal offense when compared with Pennsylvania offense. The record of the foreign conviction will be relevant also when it is necessary to grade the offense under Pennsylvania law or when there are aggravating circumstances.

**Bolden**, 532 A.2d at 1175-76.

In this case, no such analysis occurred. The record is devoid of any evidence concerning the New York conviction of criminal sale of marijuana. The only evidence concerning the New York conviction is the Lehigh County Probation Department's presentence investigation report ("PSI"), which indicates that McNeill was sentenced to time served for the criminal sale of marijuana. The PSI contains no information regarding which statute applied,

the factual circumstances of the charge, or whether the charge constituted a misdemeanor or a felony.[3]  Neither the Commonwealth nor McNeill provided the trial court with this information either.

Although the Commonwealth and McNeill did not cite to a New York statute, our independent research reveals that under New York Penal Law, an individual is guilty of criminal sale of marijuana "when he knowingly and unlawfully sells, without consideration, one or more preparations, compounds, mixtures or substances containing marihuana."  N.Y. Penal Law §§ 221.35-55 (McKinney 2015).  Notably, New York Penal Law has five degrees of criminal sale of marijuana, the classification of which depends upon the amount of marijuana involved and the age of the recipient.  ***See*** N.Y. Penal Law §§ 221.35, 221.40, 221.45, 221.50, 221.55 (providing that

---

[3]  McNeill argues that the Lehigh County Probation Department's PSI contradicted opposite findings by the Northampton County Probation Department.  McNeill's Brief at 17.  Prior to sentencing, McNeill asserted that a PSI from Northampton County that was completed for a separate offense at the time he committed these offenses, calculated his prior record score as a four.  N.T., 5/30/14, at 7.  McNeill argued that Lehigh County Probation Department issued a memo with its PSI that indicated that Northampton County erroneously graded the New York conviction as a misdemeanor when it should have been graded as a felony, which is why its PSI calculated his prior record score as five.  ***Id.*** at 8.  The certified record, however, does not contain the Northampton County PSI or the memo issued by the Lehigh County Probation Department.  "'It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in the case.'  Materials that have only been included in briefs, but are not part of the record cannot be considered."  ***Commonwealth v. McBride***, 957 A.2d 752, 757-58 (Pa. Super. 2008) (internal citation omitted).  Accordingly, the Northampton County PSI and the memo issued by Lehigh County Probation Department may not be considered by this Court.

the sale of an aggregate weight up to twenty-five grams or one cigarette containing marihuana constitutes a misdemeanor, **see id.** §§ 221.35, 221.40, whereas the sale of more than twenty-five grams or the sale of marijuana to a person under the age of eighteen is a felony, **see id.** §§ 221.45, 221.50, 221.55.).

The Commonwealth contends in its brief that the applicable New York statute is equivalent to 35 P.S. § 780-113(a)(30) which prohibits, "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act[.]"  In Pennsylvania, marijuana is classified as a Schedule I controlled substance. 35 P.S. § 780-104(1)(iv).  Any person who manufactures, delivers, or possesses with intent to manufacture or deliver marijuana, is guilty of a felony.  **See** 35 P.S. § 780-113(f)(1) ("Any person who violates clause … (30) of subsection (a) with respect to … A controlled substance or counterfeit substance classified in Schedule I or II which is a narcotic drug, is guilty of a felony[.]").[4]  Thus, the Commonwealth asserts that "when calculating [McNeill's] prior record score, it was proper for the sentencing court to count [McNeill's] New York conviction for Criminal Sale of Marijuana as a 'One Point Offense.'"  Commonwealth's Brief at 9-10; **see** 204 Pa.Code § 303.7.

Conversely, McNeill asserts that whether the New York offense was a misdemeanor or a felony and the equivalent Pennsylvania offense depends

---

[4]  We note that there is no weight requirement under this section.

upon the facts of his case. McNeil's Brief at 16. At the sentencing hearing, McNeill directed the trial court to section 220.00 of the New York Penal Law, which provides the definition of the term "sell".[5] N.T., 5/30/14, at 7; N.Y. Penal Law § 220.00 (McKinney 2015). Section 220.00 defines, "Sell" as meaning "to sell, exchange, give or dispose of to another, or to offer or agree to do the same." *Id.* McNeill argued that the New York conviction "equates to the transfer of a small amount of marihuana … a misdemeanor under 35 P.S. § 780-113(31)," which prohibits: "(i) the possession of a small amount of marihuana only for personal use; (ii) the possession of a small amount of marihuana with the intent to distribute it but not to sell it; or (iii) the distribution of a small amount of marihuana but not for sale." N.T., 5/30/14, at 7; 35 P.S. § 780-113(a)(31). The statute defines a small amount of marijuana as thirty grams of marijuana or eight grams of hashish. *See* 35 P.S. § 780-113(a)(31).

This Court has held that "[w]here, as here, the parties dispute the facts and legal implications of the defendant's prior convictions, our legislature has directed the trial court to find facts and render a decision based on the preponderance of the evidence." *Janda*, 14 A.3d at 166. In this case, the trial court did not engage in any fact finding to support its decision that McNeill's prior record score was five. The Commonwealth did

---

[5] Section 221.00 provides that "the terms in this article shall have the same meaning ascribed to them in article two hundred twenty of this chapter." N.Y. Penal Law § 221.00 (McKinney 2015).

not introduce any facts to establish whether McNeill sold, exchanged, gave, or disposed of marijuana in New York, and did not establish the weight of the marijuana involved. Moreover, at the time of sentencing, the trial court never indicated what New York statute applied or the Pennsylvania equivalent statute. Instead, the trial court simply stated, with no explanation, "His prior record score is a five. We are proceeding." N.T., 5/30/14, at 11. The trial court's 1925(a) opinion is likewise silent on this issue.

We find persuasive McNeill's argument that the facts are necessary in this instance to establish the equivalent offense in Pennsylvania. As section 220.00 of the New York Penal Law provides, the offense of criminal sale of marijuana is not limited to an actual sale. *See* N.Y. Penal Law § 220.00 (McKinney 2015). Pennsylvania's statutes are dependent on the defendant's conduct, (including whether the defendant sold, possessed, or distributed the controlled substance, *see* 35 P.S. § 780-113(a)) and therefore, factual information about McNeill's conviction is necessary to establish an equivalent Pennsylvania offense. Furthermore, depending on the conduct at issue, the weight of the marijuana may be necessary to establish whether the offense would constitute a misdemeanor or a felony. *See* 35 P.S. § 780-113(a)(31). Thus, the factual circumstances of the New York offense may result in a finding that McNeill committed a misdemeanor, which would potentially affect his prior record score. *See* 204 Pa.Code § 303.7.

We therefore conclude that the trial court was without sufficient information to determine the equivalent Pennsylvania offense. ***See Janda***, 14 A.3d at 166 (holding that in the absence of specific information about the crime, "the record contains insufficient facts from which the trial court could determine the equivalent Pennsylvania offense."). Accordingly, we must vacate the judgment of sentence and remand for fact finding to establish the appropriate prior record score.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2015